The court will call the next case, number 21-2750, Avco Corporation v. Veronica Saltz Turner. Good morning, Your Honor. Good morning, Your Honor. Ms. Benjamin? Thank you. Good morning, and may it please the Court. My name is Nicole Benjamin, and I represent the appellant, Avco Corporation. With the Court's permission, I would like to reserve three minutes for rebuttal. This Court should reverse the judgment of the District Court for three principal reasons. The first is that the District Court improperly conflated injury, harm, and damages in concluding that Avco had not established an actionable injury to proceed on its claim for breach of fiduciary duty and its related claim for injunctive relief. Second, the District Court failed to rule on Avco's claim for disgorgement. And third, the District Court failed to recognize that attorneys' fees that Avco incurred to enforce its former attorneys' ethical and fiduciary obligations are recoverable as compensatory damages. Ms. Benjamin, we're in state tort law land here, right? That's correct, Your Honor. All right, so what state law should we look to? Is the major Pennsylvania or the primary Pennsylvania authority the Snyder case in the Superior Court 2020? The primary case from Pennsylvania courts is the Meritrons case from the Pennsylvania Supreme Court in 1992. It's Meritrons v. Pepper-Hamilton. And in that case, the Court said that attorneys are bound at law to perform their fiduciary duties properly. Failure to so perform gives rise to a cause of action. It is actionable. And what the courts have said about the Meritrons decision, including the Eastern District of Pennsylvania's decision in the Airgas case, is that the breach of a fiduciary duty in and of itself is recognized to be the injury when an attorney breaches the duty of loyalty otherwise owed to a client. Now, the Meritrons case also says that a fiduciary may not insist that although he had conflicting interests, he served his several masters equally well, or that his primary loyalty was not weakened by the pull of a secondary one. May I ask you a few factual questions here? Yes. Because I think much of the activity here leading up to this case arose in the states of Arizona, is that correct? That is correct, Your Honor. And representation or legal work by Ms. Turner in Arizona litigation. That's correct. You used in your initial comments the word, I believe, words former attorney or former counsel. Correct. So there is not an ongoing professional relationship here now. That is correct. And there was not at the time of the litigation that is at the center of this case. That's correct. Ms. Turner was AAVCO's former attorney. Was she with, did she represent AAVCO or did she represent the affiliate company, the engine, Lycoming Engine, I think it is. So she represented AAVCO Corporation and the district court ultimately found that. She had at one point contended that she was only representing Lycoming, its unincorporated operating division. Again, unincorporated operating division. It was AAVCO with whom she had an engagement. Was she engaged on a case-by-case basis? Because I know that either AAVCO or Lycoming had in-house counsel. They do have in-house counsel and she was engaged on a case-by-case basis. But what I think is important is that she was engaged on a case-by-case basis over the course of a period of 12 years. Well, I understand that you jumped ahead and I understand why you would want to do that. But she was no longer in an attorney-client relationship with AAVCO or Lycoming at the point in time that her conduct in the underlying litigation that is at the center of this took place. That is correct, Your Honor. And over the period of the 12 years that she did represent AAVCO, her representation was primarily in aviation products liability cases. If that's the case, how can the breach that is alleged here go to a professional relationship that no longer exists? It doesn't have to emanate from whatever proprietary information it was that she previously had access to and drew upon for some kind of use that is unclear to me anyway that took place in the underlying state court litigation. So I have a couple of responses, Your Honor. The first is that the duty of loyalty is one that is continuing and the district court recognized that. The duty of loyalty that an attorney owes to his or her client... But loyalty to do what? Loyalty not to use or disclose this proprietary information that she secured? No, Your Honor. No, Your Honor. That would be a breach of fiduciary duty of confidentiality. So here the focus is on the fiduciary duty of loyalty, which means... ...of her professional relationship for the rest of her professional career. So I'm trying to get to some kind of temporal period during which she's bound to this. I understand, Your Honor. To put some further structure around that question, something that's been unclear to me. When she had this relationship with AAVCO... Yes. ...was it a relationship with her or was it a relationship with a law firm with whom she was employed? She practiced with a number of different law firms during the time that she was representing AAVCO. So the relationship was one with her. She was the attorney who was being sought out for these representations of AAVCO. As opposed to a firm. That's correct, Your Honor. Okay. And through the course... Wolk reached out to her during the course of settlement negotiations. Is that correct? I'm sorry, Your Honor. Can you repeat that question? The Wolk firm reached out to her during the course of actual settlement discussions which she was involved in. While she was... On behalf of AAVCO. Yes, that's correct. While she was working for AAVCO, she received a communication from the Wolk law firm that identified a number of cases that there was interest in trying to resolve. The Arizona, the Torres Arizona case was one of them. The other piece that I think is important is that the Torres Arizona case was one of four cases that were filed by the same law firm, by the same plaintiffs, and a number of those cases were ongoing at the time Ms. Turner represented the plaintiffs in the Torres Arizona case. Let's take another case. What did she do, disclose, misuse, violate, what have you, that actually constitutes a breach here? So there are several things, and I think at a bare minimum there were issues of material fact on this issue. But what she did is she appeared in the Torres Arizona case armed with all of the confidential and proprietary information she had received over the course of her... For example, she said what? She said what that she shouldn't have said. She engaged in briefing and in examination. What did she say in the brief that she shouldn't have said? She, in the brief, opposed one of AAVCO's experts, an expert who she had worked very closely with. So what? She has to misuse some information that she had, right? That would be true for a claim for breach of fiduciary duty of confidentiality, but the duty of loyalty, what the case in Meritron, the Supreme Court in Meritron says, and also what the cases from the Eastern District of Pennsylvania say, is that it is that breach of loyalty in and of itself that causes injury. How did she breach it? What did she do? By representing... Did she ask a question, for example, that revealed or at least suggested that she was depending upon some information or knowledge that she had acquired during the course of her representation? Well, she certainly had information and knowledge.  And the activity... How's that a breach? It just seems so strange. It's almost as if you're suggesting that someone who does defense side work for a number of years and learns a lot of really useful information can't switch sides and do plaintiff side work. This is common. This is common. People who are prosecutors for years or decades then become defense lawyers, and the reason they're really good defense lawyers is they know how to think like a prosecutor. It seems like you're making a frontal assault on that well-worn principle. I think the difference, Your Honor, is that she's doing it against the very same client. Right. Well, you've got to judge this question. You need to tell us what she did. You can't just say she knew some things about this expert. What secret did she disclose? I want to focus in response to your answer to my colleague's questions. You're saying she did it against AAFCO, but in the Torres case where you objected to her appearance to argue the Daubert motions, AAFCO was no longer part of the case, and, in fact, the Arizona Supreme Court had affirmed the dismissal of AAFCO in that case. So how can you say it against AAFCO? Not at the time that she engaged in the representation. The Supreme Court had not yet affirmed. AAFCO was out of the case. AAFCO was dismissed on the basis of lack of personal description. They were dismissed from the case. So she was arguing the Daubert motions against the other former co-defendants with AAFCO who remained in that Arizona Torres case. At a time when there was an appeal pending in Arizona in two other pieces of litigation by the very same plaintiffs, involving the very same plane crash, involving the very same law firm. All right. Let's assume you're right on that. What about damages? What remedies are you seeking? There were three, I'll say four remedies that are at issue. The first is compensatory damages. The second is disgorgement. The third is injunctive relief if the court concludes the monetary damages. All right. I'm going to ask you to table disgorgement because I have some questions for counsel on that when he gets up. Let's start with injunctive and declaratory relief. Why didn't you forfeit it by failing to brief it before us? So injunctive relief was briefed before this court. Where? So in our papers, the issue of injunctive relief is referenced. The issue of injunctive relief comes down to the issue of injury. I know what it is. I'm asking you where you briefed it. Sure, Your Honor. So in our papers, we address specifically the district court's conclusion that injury was not established. And it is that conclusion that forms the basis, the only basis for the court's denial of injunctive relief. What the district court said that it was assuming that there was a duty and it was assuming there was a breach. I'm sorry. If you could slow down a little bit. Yes, Your Honor. Where in your brief did you tell us that injunctive and declaratory relief should be awarded because the district court made X, Y, or Z mistake? I believe, Your Honor, it's the first section of our brief where we address. Just give us a page number. So I'm on our reply brief at page 2. So it's not in the opening brief. In the opening brief, we address the issue of conflation of injury, harm, and damages in the very first section. How does that help you? Because what the district court said is that it was assuming. We're asking you now what the district court said. We're asking you where in your brief did you tell us that the district court should have awarded declaratory injunctive relief. And it made a mistake. It's not enough to say in a brief the district court should have given us declaratory injunctive relief. The whole purpose of the brief is to tell us why the district court erred. And we're asking you where in your opening brief did you tell us that. I understand, Your Honor. And in our opening brief in section 1, we address the fact that the district court. At page? At page 16 of our opening brief. All right. Then let's look at page 16. Okay. Give me one second. Where on page 16 did you make the argument? So at page 16, we're addressing the issue of conflation of injury, harm, and damages. And then if you turn to page 29. I'm sorry. No. Where at page 16 did you say the district court erred when it didn't grant declaratory injunctive relief? So the section begins on page 16, Your Honor. It's page 29 where we have. All right. So. The specific sentence. All right. I'll go to 29 of the brief. At the bottom of page 29 where we tie this argument together. We say that the court should reverse the district court's grant of summary judgment in Ms. Turner's favor on AVCO's claim for breach of fiduciary duty and its claim for injunctive relief. All right. That's a prayer for relief. That's not a legal argument. That's the prayer for relief. You're not telling us why. The rationale is what begins at page 16. Okay. Because the only basis that the district court had for the denial of injunctive relief. All right. Let's go to compensatory. So for attorney's fees in the Torres matter in Arizona, did you not affirmatively waive that before the district court? No, Your Honor. That was briefed extensively in the district court. What documents did you present to prove up your damages for attorney's fees? I'm sorry. I think I misunderstood Your Honor's question. I believe what Your Honor is referring to is a claim for disgorgement based on the attorney's fees. No, no, no. As I said, disgorgement. I have questions for your friend on the other side. AVCO is not. Again, I'll tell you. I'm showing you my cards. Yes, I understand. My understanding is in the Torres Arizona matter, that was affirmatively waived before the district court for attorney's fees in the Torres, correct? That's correct, Your Honor. Okay. Now, the next category was attorney's fees in the other Torres cases around the country. No, Your Honor. You're not seeking those? So what was – there are two different types of damages sought. One is the attorney's fees that AVCO incurred in the underlying litigation in this case. And the second is disgorgement of the fees that Ms. Turner earned. Elaine, you're asking for attorney's fees in this case. Your fee. Your fee for arguing, preparing a brief for arguing this case today. That is one of the requests. You're saying that's the damages. And that's contrary to the American rule. In what the courts have said, in a case of an attorney's breach of fiduciary duty. Yes, but that's – I understand what your answer to that is. But Pennsylvania's never said that. Pennsylvania has never adopted that. If they have, where have they adopted it? The Philadelphia Court of Common Pleas decision in the Axkan case recognizes this principle. And the court said that fees and costs incurred by a former client. You understand. With all due respect and due respect to the Court of Common Pleas, believe me, we're not bound. I understand that. But that same principle was also accepted by the Eastern District of Pennsylvania That's not Pennsylvania. It is not. You're asking us to predict that the Pennsylvania Supreme Court would find that as an exception to the American rule. Based on the Philadelphia Court of Common Pleas case. I would say this. That it's not an exception to the American rule. But rather a recognition that in cases like this, where an attorney's breach forms the basis for the injury. And the only recourse is for the – Yeah, but the American rule says unless there's a statute, unless there's an agreement, or unless there's an exception, there's no fee. So it's not a statute. It's not an agreement. It's got to be an exception. In cases where there's an exception to the American rule, the trigger for that exception is that there is a prevailing party. Somebody wins, and that triggers the exception. Here, the trigger is the breach itself and the need to enforce the right that the client was otherwise entitled to. And that's what the cases upon which we rely say. That the only way to make the client whole in those circumstances is to recognize that the fees incurred are, in fact, compensatory damages. It's for you to initiate a lawsuit and pursue this appeal and then seek damages from this subsequent litigation. That is what the courts hold. And the acts can – I've missed that then. Let me – it goes without saying. It goes without saying, but I speak only for myself. But given this breathtaking absence of authority, this case looks to me like a warning to Ms. Turner. Stay away from litigation that involves us. I would say, Your Honor, that it goes one step further. And I say that because there is an entire body of law that recognizes that in the case of an attorney's breach of fiduciary duty, actual damages are not required. That it is the breach in and of itself that gives rise to the harm and which is remedied by, at a minimum, nominal damages, at a minimum, injunctive relief, and in other circumstances, attorney's fees and disgorgement. Before you sit down and you're talking about the breach of fiduciary duty of loyalty. Yes. Wasn't it Avco that showed Mrs. Turner the door? There was a dispute between the parties toward the end of that relationship. You're the ones that made her second seat. You made her second seat, and then when she switched firms again, you sent her out the door. She ultimately made the decision that she was no longer going to take on Avco work. And there is a letter in the record to that effect. Doesn't that factor into the breach of fiduciary duty of loyalty when you pulled the representation out from under her? I don't believe it does because there's nothing that says that Rule 1.9 of the Rules of Professional Conduct ceases to apply, depending on how the parties end their relationship. And there's an abundant body of law that says that that duty of loyalty continues in perpetuity, that that does not – is not extinguished at the end of the relationship between the parties. Did you reserve time for – I did, yes. Okay, we'll hear you on rebuttal. Thank you, Your Honor. Thank you, Ms. Gundry. Mr. Ely, is it, or Eli? Ely, Your Honor. Ely. Everyone mispronounces it. I answer to either. May it please the Court. I'm Wayne A. Ely, counsel for Ms. Saltz-Turner. Could we begin with what I warned you about? You did tip me off. I mean, that has to go back. The district court didn't address it. Even if you went on the other stuff, doesn't at least the disgorgement piece have to go back? I don't think it does because there's no evidence supporting that she was given a benefit by AAFCO. If you look at the case law that both sides recited. What is she requesting? And I should have asked her this, but we were indicated, Judge Hardiman indicated return to this. What is she asking be disgorged? What is AAFCO asking be disgorged? AAFCO, I assume, is asking that the fees Ms. Turner was paid for the work in Torres. Right. They were not paid by AAFCO. So if, in fact, they could make their case, Meritrans, which is Pennsylvania Supreme Court decision, holds disgorgement is available, right? Disgorgement is a remedy where there has been a benefit conferred on the attorney by the client. And if you look at some of the cases cited. Well, that's their argument, though. I mean, whether their argument prevails when it goes back is another question. But if they're correct, they could be entitled to disgorgement. But is it your position that we can determine as a matter of law that there can be no entitlement? Not under the circumstances where AAFCO didn't give her anything and confer a benefit on her. Some of the cases we've cited in our brief point out that the purpose of disgorgement is to return a benefit that should not have been given to the attorney, not to create a windfall. There's actually a couple of cases we cite. But Meritrans is broader than that, isn't it? I don't think it is. Meritrans was also a much more severe conflict, and I believe it was an ongoing conflict of representation at the exact same time. And Judge Smith, your point was well taken. This not only looks like a warning. That's exactly what the case was. They had a year to do their discovery. I handled this case from the inception. They had nothing, no information that she misused, nothing at all. They have nothing that she did that could be deemed to be a breach of any fiduciary duty. But it's even worse than that. And Judge Fisher, you actually got part of it out, and Judge Smith got the other part out. Not only was she not representing AAFCO at the time, not only was she not doing anything against their experts, counsel called them AAFCO's experts. They were not AAFCO's experts, and I think, Judge Fisher, you mentioned that. And this was a year after AAFCO was out of that case. A year. And she didn't do anything wrong here. They lost their ability to get a preliminary injunction. Judge Wilson denied that right up front and said they basically have nothing but information and belief. And they didn't even brief the permanent injunction. You're correct about that. He said there was no injury. He said without injury, this case can't go any further and she couldn't prove injury. But he didn't discuss the question of disgorgement. Right. And you don't have to send it back for that because I don't believe disgorgement can apply where she didn't get anything. There has to be a direct link to her. Well, disgorgement is only a remedy, right? That's correct. And it's an equitable remedy. An equitable remedy. Right. But to get there, there has to be something given to the attorney. There's a case cited, I think, in both our briefs where the attorney was representing an individual in a divorce and at the same time sued that individual for fees. When a good attorney knows, that's a bad idea. That created a huge conflict. So in that case, the court simply said, you're not getting a fee in the divorce case. She has a right to disgorgement of the fees that she paid you. But isn't it a little cloudier than that? In some cases, the disgorgement is ordered. If you get paid by a third party, sometimes courts order that to be disgorged. I think if it is, it must be ordered. I don't know who it goes to because it would create a windfall for somebody. And that's exactly what some of the courts have said. You just hit the nail on the head, Judge Hardiman. That's exactly what they say. That's a windfall. If it's an equitable remedy, there's a right to trust. Right. Equity is about balancing the scales. This is all – this is – I challenge you to rebut this. But this seems messy enough to let the district court wrestle with it in the first instance. This is not the type of thing that we typically do in the first instance. We will affirm cases for other reasons supported by the record, but that's usually when there's some sort of clear legal principle that we can expound upon. And here, the issue just wasn't even addressed. It was forgotten about, apparently. Well, you actually have enough here in the record to address it because they admitted in their summary judgment fact statement they never paid her any money. Yes, but isn't what they're saying is, look, we educated you about piston engines and you went out against the fiduciary duty of loyalty you owed to us and you earned yourself a fee in this case of Torres versus Avco et al. And we want to disgorge from you that revenue you made, which was as a result of our education. That's really what they're saying. But that's not disgorgement because they didn't pay it. Well, it's a form of disgorgement. They didn't pay it, but they educated her and she didn't remain loyal to that. Because it's equitable. It doesn't have to be a direct payment from Avco. The court in its equity can say that these are ill-gotten gains and you have to disgorge them. Again, I don't know who they go to. And that's the problem. But I don't even want to wrestle with that as a matter of first principle. And that's where equity fails. And the word equity itself implies that there's a scale that has to be balanced. Taking money from her. Well, but like Judge Smith said, I mean, there are cases involving constructive trust. There are cases where courts in equity order money to be paid to charities or various things where the party harm is no longer around. There's just not enough here for them to make a claim for disgorgement. If it's merely a remedy, doesn't there have to be an underlying cause of action in court? That's the next problem we have. From which the remedy can then start. Correct. You have a case here where it was a year afterward and they couldn't point to one thing that she did. They took an extensive deposition. There was extensive written discovery in this case going on for a year. I'm sorry, Judge. Shouldn't the district court. I'm sorry. I interrupted. That's okay. You're the judge. That's okay. But I appreciate the respect. But, I mean, isn't this the case where the district court will be in a better position to analyze that? What they did was they assumed that there was a fiduciary duty and there was a breach, but yet there was no injury. They didn't evaluate disgorgement. I think disgorgement is just not in play here at all. When you look at the case law, I haven't seen a case, and maybe I've missed one, where a court has ordered that money paid to an attorney by another party should be returned to a different party. I'm not sure that's your best argument. There's plenty of arguments here, though. Before you get to them, if we were to send this back and ask the district court to address disgorgement, how does the district court do that without first going through the analysis that is necessary to establish a cause of action, a tort violation in ways that some of our questions have already suggested on what has been argued here may not exist for purposes of the other remedies that have been sought? Well, they barely covered damages in their motion for summary judgment. They filed their own, and then obviously we filed one that was granted. Wouldn't the district court, to ask the question another way, need to go through the same analysis it would have to go through for purposes of determining whether there is a right to compensatory damages here or the attorney's fees that were taught? Oh, the underlying fees in this case? Yes. Well, I think it's clear the American rule precludes them. I mean, they failed to demonstrate an exception in Pennsylvania law. Clearly, we're in Pennsylvania law in this case. Unless we turn the American rule on its head, they can't expect to collect attorney's fees. I mean, that would open up a floodgate of problems, and I don't think the Pennsylvania courts have ever said that that's permissible. All right, aside from the damages that are sought in violation, yes, clearly of the American rule, what about the suggestion of the plaintiff, of the appellant, that there is inherent in the cause of action a right to damages? That's metaphysical. It's not hard damages. They have to show, and you mentioned the Snyder case earlier, I believe, that one of the members of the court did. That is the controlling authority. It's very clear. Damages is an element. Well, I'm not sure that they stated it quite as clear as it could have been. The old basic law school lesson about tort, of course, is duty, breach of duty, causation, and injury or damages. And they actually set out three prongs in the Snyder case, and in that they seem to conflate three and four, if I read it correctly, and that the defendant suffered an injury caused by plaintiff's breach of the fiduciary duty. So that may be in part where plaintiff appellant's argument is coming from, but I'll leave that to them. Interestingly enough, the one element that would have been collectible if they could overcome the mountain of problems they have on liability would have been the fees in the Torres Arizona case that they incurred in fighting her admission. And they affirmatively waived it. Judge Walson gave them a choice. Because they didn't want to disclose their fee information. In one of his opinions, he said, you will either decide to disclose that information or you will not collect those damages and you will not be able to go back on that choice. They sent us an interrogatory answer that they were not seeking those damages. You have, in shorthand form, by invoking the term liability, essentially said better than I what I was inquiring the district court would have to do here on remand, and that is it would have to go through the steps necessary to determine liability before it could ever reach a question of the disgorgement remedy. If this were remanded, but it doesn't have to be. We're here on a de novo standard. You can throw the entire case out. It's no surprise to you that that's what I'm requesting that you do. But if you look at their brief, all they focused on was this alleged violation of one of the PA rules of professional conduct. And they clearly, I don't need to tell any of you members of the court, they do not allow a civil cause of action. The rules themselves say that. Common law does. Common law does, but you still have to prove that cause of action. And they decided to use bridges to be sure. And Meritrans has recognized that common law duty. Correct. But I believe the Meritrans language is courts have ordered disgorgement of fees paid. I believe they say paid or owed. And AAVCO has neither. It doesn't have to be by AAVCO, though. I keep coming back to that. I think it does. Paid by somebody. Is it really your argument that, I know you don't agree with this, but let's assume for a minute that Saltz-Turner's fees paid to her in the TORUS litigation were ill-gotten gains. Is it your argument that because AAVCO wasn't the party that paid the ill-gotten gains, that a court doesn't have the equitable power to order disgorgement of those ill-gotten gains? Assuming those facts that you just cited, Your Honor, are correct, obviously I disagree there was anything wrong done. But I think equity does not allow that. And that's the word equity itself. But you want us to write an opinion that says disgorgement is an equitable remedy, but it can only be ordered from the party suing on the cause of action. Yeah, there was an opinion I cited in my brief. It was a district court opinion. I believe it was Judge Bailson in a case where he said that disgorgement is where someone has paid something and they're getting it back. It went in from the same person it goes back to. Anything else is not equitable because you're allowing a windfall. Equity does not allow a windfall. Well, equity might, given the nature of equity, if there was wrongdoing. Right. And there was no wrongdoing. A judge, if the party who was injured can't be the recipient of the disgorged ill-gotten gains, a judge in equity still might say, well, this is not perfect parallelism, but it's more equitable to force the wrongdoer to cough up the ill-gotten gains, even if I don't really have a good recipient to whom the ill-gotten gains should be distributed. But you're challenging that principle? I am. You're saying that that's not? I am, because that's not damages to AAFCO, and it's not equitable to give them something. What about in Meritrans? The Pennsylvania Supreme Court cited a case that was decided by the Pennsylvania Superior Court in 1979, Boyd v. Cooper. You familiar with Boyd v. Cooper? Yes, Your Honor. I believe I've read it. Okay. And Boyd states that where a fiduciary acquires information in confidence and adopts or uses it for his own private benefit and personal profit, he may be required to account to the plaintiff for any profits derived therefrom, as well as be subject to liability for damage to sustain as a result of such breach of his fiduciary duty. Correct. And going back to answer your question, Judge Fischer, going back to Judge Smith's question, they took a mountain of discovery probably eight feet high, and they don't have one piece of evidence that what you just described happened. Not one. But the district court didn't evaluate that. They hardly argued it. Huh? It was their obligation. But it could be part of disgorgement. I cited that for the proposition that Boyd v. Cooper was cited in Meritrans. It talks about a form of disgorgement which is broader than what you were arguing Meritrans was limited to. Again, I think disgorgement is inappropriate here. I'm almost out of time. I did want to mention your honors didn't bring this up in the appellant's argument, but they're asking for nominal damages now. They never briefed that. And if you allow nominal damages to preclude summary judgment, you're going to have more trials than anyone will know what to do with. So unless there are any other questions, I'll conclude. Thank you, Mr. Ealy. Thank you very much, your honors. We'll hear the rebuttal of Ms. Benjamin. Thank you. Thank you, your honor. I'd like to focus on the issue of disgorgement. I think the court has correctly noted that there is authority for disgorgement here, and the issue of disgorgement wasn't addressed by the district court. And I'd like to start with what this court said about disgorgement in the Hoover v. Taylor case. This goes back to 2006. And in that case, this court addressed disgorgement in the context of Texas law. But what it said that I think is important is that Pennsylvania might, quote, adopt the well-considered position of every jurisdiction that has considered the issue, which is to require harm only for damages, not for the equitable remedy of disgorgement. And since then, we've had decisions from Pennsylvania courts, we've had decisions from the federal courts sitting in Pennsylvania that recognize the availability of disgorgement as a remedy in a circumstance such as this. And we have, even more specifically, case law that addresses disgorgement of fees paid by a third party. Let's assume we agree with you on that, that it is available as a remedy, even if Avco didn't pay her the funds. What about Mr. Ely's point that, and Judge Smith's question hit on this somewhat, that it's just a remedy, it's not a cause of action. So what's your argument for why you've proved at the summary judgment phase, you've done enough to sustain a cause of action that would even put any remedy, including the disgorgement remedy, on the table? Again, that goes back to the Meritron's decision and the conclusion there that it is the breach of itself that causes injury and harm. And there are two other decisions that address that issue. Yeah, but what's the breach, though? So the breach here is the acceptance of an engagement and the representation of a party that is adverse to Avco, not just in the... But the district court never analyzed that. That's correct, Your Honor. And the district court erred by reaching the conclusion that it didn't need to address the issue of disgorgement because all the district court did was assume that those first two elements were met. So you're saying that since it assumed that those first two elements were met, it had to... That's correct, Your Honor. It had to decide the disgorgement question. That's exactly right. If it had ruled that there was no breach, then there would have been no necessity to go to disgorgement. That's correct, Your Honor. But the district court did not rule on whether there was or was not a breach, and that's what requires remand here. And I think there were some questions about what constitutes that cause of action, and I just... You can affirm a district court for any reason supported by the record. And as some of the questions have suggested, there has not been demonstrated in the record a cause of action, no specific violation, no specific misconduct, no specific wrongdoing. Now, I know you don't agree with that, but if we were to determine that, why can't we simply affirm across the board, including as to disgorgement? Well, I don't agree with that in the first instance, but I think that the case law does support at a minimum the availability of nominal damages if that at the very end of the day is all we are left with. Never asked for it. So I have two responses to that. One is that there is an abundance of Third Circuit law that says that nominal damages do not need to be specifically pled. When a party pleads, seeks compensatory damages, and those compensatory damages are not available, nominal damages can be awarded. And there is also... Can be awarded by a district court, but the district court didn't award them here and you didn't ask for them. That's... And now you're asking for them for the first time in the litigation here. It's not... Do you have any case law, any cases where a party did not ask for or receive nominal damages in a district court and for the first time asked for them in a circuit court of appeals and the circuit court of appeals endorsed that? I can point the court to three cases from this court dating back to 1965 where it's said that as a matter of federal common law, it is not necessary to allege nominal damages. And nominal damages are proved by deprivation of a right. And to go back to... That begs the question. It's common for district judges to enter nominal damages in cases where they're not pled. I grant you that. But that's not what happened here. That's correct. So do you have any cases where a circuit court awarded nominal damages where the issue was not even raised in the district court? To be clear, I'm not asking the circuit court to award nominal damages. What I'm asking is that the court recognize that the availability of nominal damages and the availability of disgorgement damages is what demonstrates to us that on that question of what constitutes the cause of action with respect to the issue of injury, whether that injury means something like actual damages or whether that means simply injury, which the Maratron's case says is satisfied when an attorney breaches his or her fiduciary duty. There's also a case. It's a Second Circuit case called Yukos that is cited by both parties. And I think it very clearly illustrates the point because what it says is that courts often conflate damage with damages. And damage is the element of the claim. Damages is the remedy. And this court in the Widener case also recognized a similar proposition. For those reasons, we believe that we have made out a cause of action for breach of fiduciary duty, and it was error for the district court not to take that further step by addressing all of the remedies that were sought here, including this court. Are you really talking about the distinction between the fact of damages and the measure of damages? Yes. And you're saying that the breach is the fact of damages. That's exactly what Maratron says and what the decision in Aragas recognizes that Maratron says. That's correct, Your Honor. And finally, if I can just add one final note, in terms of the injunctive relief sought, I think it's important to note that the purpose of injunctive relief is to stop this activity from happening. And when Ms. Turner was put on notice that this was an issue for AVCO and she was deposed on that issue, her response is that she found it laughable. She responded that she didn't do anything to confirm or not whether she had a conflict. And for those reasons where this activity is ongoing and there continues to be litigation involving the tourist crash, for those reasons we would ask that the court reverse the decision of the district court and remand for findings on those first two prongs of the breach of fiduciary duty claim. I'll refrain from following up. So will I. All right. Thank you very much, Ms. Benjamin. Thank you, Mr. Ely. The court will take the matter under advisory.